KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Keith R. Murphy (KM-5827)

KAYE SCHOLER LLC
Three First National Plaza
70 West Madison Street, Suite 4100
Chicago, IL 60602-4231
Telephone: (312) 583-2300
Sheldon L. Solow, Esq.
Michael D. Messersmith, Esq.

*Counsel for Arthur Steinberg, as Receiver
for Northshore Asset Management, LLC, et al.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ARTHUR STEINBERG, as Receiver for
Northshore Asset Management, LLC, et al.,**

                  **Plaintiff,**

      -against-

**JOEL ASH,**

                  **Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No.
07-CV-_____**

## COMPLAINT TO AVOID AND RECOVER TRANSFERS

Arthur Steinberg, the court-appointed receiver (the "Receiver") for Northshore Asset Management, LLC ("Northshore"), and certain other related and affiliated entities and funds (the "Receivership Estate" or the "Northshore Entities") including but not limited to Ardent Research Partners, L.P. ("Ardent"), by his undersigned counsel, states his complaint against Joel Ash (the "Defendant") as follows:

29041749.DOC

## I.      Parties

1. The Receiver is a New Jersey resident with a business address at 425 Park Avenue, New York, New York. He was appointed as temporary receiver for the Receivership Estate pursuant to that certain Order to Show Cause, Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief (the "TRO") entered by the United States District Court for the Southern District of New York on February 16, 2005, which commenced the receivership proceeding (the "Receivership Proceeding").

2. Pursuant to an oral order entered by the Court at a hearing on February 25, 2005, and a written order entered by the Court on October 27, 2005 (the "Order") , Mr. Steinberg was named the permanent receiver for the Receivership Estate.

3. The Receiver's specific duties regarding the Receivership Estate are set forth in Section XII of the TRO and authorize the Receiver to prosecute the above-captioned action.

4. On information and belief, the Defendant is an individual with a residential address at 4184 Briarcliff Circle, Boca Raton, Florida 33496-4067.

5. On information and belief, the Defendant is the personal accountant for Stephen Alderman ("Alderman"). On information and belief, Alderman is a close friend and business associate of Francis Saldutti ("Saldutti"), Ardent's portfolio manager and a minority interest owner of Northshore.

## II.     Jurisdiction and Venue

6. This action is brought pursuant to 28 U.S.C. § 2201(a) and sections XII (a), (d), (e), (g) and (j) of the TRO.

7. Venue and jurisdiction are proper in this district pursuant to 28 U.S.C. §§ 1331(a) and (b), 28 U.S.C. § 754 and section XII of the TRO as this action involved an asset of the Receivership Estate.

### III. Common Allegations

#### A. The Investment

8. In the Fall and Winter of 2004, the Defendant and Saldutti had several conversations regarding the Defendant's potential investment in Ardent.

9. In December 2004, the Defendant received from Ardent, at Saldutti's direction, that certain Confidential Offering Memorandum of Limited Partnership Interests of Ardent Research Partners, L.P. (the "Ardent POM"). At or around the same time, the Defendant received from Ardent that certain Subscription Agreement to become a limited partner in Ardent (the "Subscription Agreement").

10. On December 28, 2004, the Defendant executed the Subscription Agreement and returned it to Ardent.

11. On or about January 4, 2005, the Defendant transmitted $500,000 (the "Investment") via wire transfer to Ardent.

12. At or about the same time, Alderman invested an identical amount in Ardent by conveying a check dated January 5, 2005, to Ardent. This check was deposited into Ardent's account on January 11, 2005.

#### B. Ardent's Financial Difficulties

13. On January 19, 2005, approximately two weeks after the Defendant remitted the Investment, Saldutti emailed Northshore's principals to inform them of the "daily drumbeat" of

phone calls from Ardent investors requesting redemptions and the lack of money to fulfill such requests.

14. On January 21, 2005, Saldutti acknowledged in an email that there existed "$37 million of unaccounted for Ardent's [sic] assets" and warned of the "serious and unavoidable legal ramifications" regarding the misappropriation of such funds.

15. On January 23, 2005, Saldutti sent several emails to Northshore's principals regarding certain "missing funds" that belonged to Ardent and had not been repaid.

**C.  The Redemption**

16. On or around January 24, 2005, Alderman and Saldutti met to discuss the withdrawal of Alderman's investment from Ardent.

17. Shortly thereafter, Alderman advised the Defendant that Saldutti had chosen to return the Investment to the Defendant.

18. The Defendant did not at any time request a redemption of the Investment and was not aware of the discussions between Saldutti and Alderman.

19. On January 24, 2005, Ardent, at the direction of Saldutti, made a transfer to the Defendant in the amount of $500,000 in full redemption of the Investment (the "Redemption Payment").

20. On that same date, Ardent, at the direction of Saldutti, made a transfer to Alderman in the amount of $500,000 in full redemption of his investment.

21. The Ardent POM provided that withdrawals may be made to limited partners only on the following conditions:

> Upon giving 45 days written notice a Limited Partner may withdraw all or part of his Capital Account as of the last day of any fiscal year; provided, however, that no such withdrawals may be made prior to the fiscal year-end occurring at least six months

following the date of the limited partner's admission to the Partnership.

Ardent POM at § 9.

22. The Limited Partnership Agreement of Ardent Research Partners L.P. contains an identical provision at section 4.02 thereof.

23. As Portfolio Manager for Ardent, Saldutti was responsible for directing disbursements from Ardent to pay investor redemptions as appropriate under the Limited Partnership Agreement.

24. Despite the requirements of the Limited Partnership Agreement and the Ardent POM, Ardent, at the direction of Saldutti, made the Redemption Payment to the Defendant notwithstanding that (a) it was not the end of Ardent's fiscal year, (b) no redemption request or any other notice was made by the Defendant, and (c) the 45-day waiting period had not elapsed.

**D.    Commencement of the Receivership Proceeding**

25. On January 28, 2005, only four days after the Redemption Payment, Ardent's counsel, Seward & Kissell LLP, resigned and, at Saldutti's request, informed the U.S. Securities and Exchange Commission (the "SEC") of the misappropriation of funds occurring at Ardent and the other Northshore Entities.

26. In early February, the SEC attempted, without success, to meet with Northshore's principals to ascertain the whereabouts of the missing Ardent monies.

27. On February 9, 2006, Saldutti met with the SEC and provided documents evidencing the misappropriation of Ardent's funds.

28. On February 16, 2005, the SEC obtained the TRO from this Court which froze Ardent's assets, commenced the Receivership Proceeding and appointed the Receiver to manage the Northshore Entities' affairs and locate and recover their assets.

### E.  The Redemption Payment as an Actual Fraudulent Conveyance

29. At the time of the Redemption Payment, Saldutti knew that Ardent was in a precarious financial condition as Saldutti was unable to pay outstanding obligations.

30. Saldutti also was aware of numerous pending redemption requests from Ardent investors that were made prior to the Investment and were unsatisfied as of the date of the Redemption Payment.

31. Saldutti also had knowledge at the time of the Redemption Payment of the improper, fraudulent and illegal activity ongoing at the Northshore Entities, and expressed concerns to Northshore's principals regarding the legality and propriety of their conduct in failing to honor redemption requests or provide the necessary funding to satisfy other outstanding obligations.

32. Notwithstanding (a) his knowledge of Ardent's precarious financial condition and the redemption requests received from other Ardent investors and (b) his awareness of ongoing fraudulent activity with the Northshore Entities which held Ardent funds, Saldutti directed Ardent to redeem in full the Investment made by the Defendant by making the Redemption Payment.

33. Ardent, by and through the actions of Saldutti, made the Redemption Payment with the actual intent of hindering, delaying or defrauding other investors and creditors of Ardent.

34. The actions of Ardent, by and through Saldutti, its portfolio manager, in making the Redemption Payment, were improper and allowed the Defendant, the business associate and accountant of Saldutti's close friend, to receive the full value of the Investment notwithstanding

that the Defendant failed to request a redemption or comply with the withdrawal requirements set forth in the Limited Partnership Agreement and the Ardent POM.

35. The unlawful and improper nature of Ardent's conduct in making the Redemption Payment is demonstrated further by the fact that approximately four days after making such payment, Saldutti directed Ardent's lawyers to inform the SEC of potential wrongdoing at the Northshore Entities and Ardent.

**F.   The Redemption Payment as a Constructive Fraudulent Conveyance**

36. After his appointment, the Receiver, and his professionals, reviewed and analyzed thousands of documents and interviewed numerous individuals regarding Ardent's financial condition and operations.

37. Based on this review and analysis, the Receiver determined that the value of Ardent's assets and securities was far less than the value (a) Ardent generally represented to investors and (b) utilized by Ardent in making the Redemption Payment to the Defendant.

38. Based on the inaccurate and inflated values attributed to Ardent's assets and securities and utilized by Ardent in granting redemptions, the Redemption Payment, even if it was otherwise proper, exceeded the amount properly payable to the Defendant by no less than $38,323 (the "Excess Transfer").

## COUNT I

**(Avoidance and Recovery of Actual Fraudulent Transfer Under New York Law)**

39. The Receiver repeats and realleges each and every allegation contained in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. The Redemption Payment involved certain transfers of Receivership Estate property within four years of the commencement of the above-captioned case.

41.     The Redemption Payment was made with actual intent to hinder, delay or defraud either present or future creditors and investors of which the Receivership Estate was or became indebted, on or after the date such transfers were made and such obligations were incurred.

42.     The Redemption Payment is avoidable pursuant to N.Y. DEBTOR AND CREDITOR LAW § 276 (McKinney's 2005) and the Receiver is entitled to recover the Redemption Payment from the Defendant in an amount not less than of $500,000, plus legal fees and costs.

WHEREFORE, the Receiver demands judgment (i) declaring that the Redemption Payment constitutes a voidable transfer pursuant to N.Y. DEBTOR AND CREDITOR LAW § 276 (McKinney 2005); (ii) avoiding the Redemption Payment and ordering the Defendant to return to the Receivership Estate the full value of the Redemption Payment in an amount not less than $500,000, plus interest thereon at the applicable legal rate; and (iii) awarding such other and further relief as may be warranted under the circumstances.

## COUNT II

**(Avoidance and Recovery of Constructive Fraudulent Transfer Under New York Law)**

43.     The Receiver repeats and realleges each and every allegation contained in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     The Excess Transfer involved a transfer of Ardent's property within four years of the Receiver's appointment.

45.     Ardent received less than fair consideration from the Defendant on account of the Excess Transfer.

46.     As of the date of the Excess Transfer, Ardent (a) was insolvent or became insolvent on account of the Excess Transfer; (b) was engaged in a business or was about to engage in a business for which its remaining property after the Excess Transfer was

unreasonably small capital; or (ii) intended to incur, or believed that it would incur debts that would be beyond its ability to pay as such debts matured.

47. The Excess Transfer is avoidable by the Receiver pursuant to N.Y. DEBTOR AND CREDITOR LAW § 270 et seq. (McKinney 2005).

WHEREFORE, the Receiver demands judgment (i) declaring that the Excess Transfer constitutes a voidable transfer pursuant to N.Y. DEBTOR AND CREDITOR LAW § 270 et seq. (McKinney 2005) ; (ii) avoiding the Excess Transfer and ordering the Defendant to return to the Receivership Estate the full value of the Excess Transfer in an amount not less than $38,323, plus interest thereon at the applicable legal rate; and (iii) awarding such other and further relief as may be warranted under the circumstances.

## COUNT III

### (Conversion)

48. The Receiver realleges and incorporates paragraphs 1-47 of the Complaint as if fully set forth herein.

49. The funds utilized by Ardent in making the Redemption Payment were clearly identifiable.

50. Following the Redemption Payment, the Defendant exercised unlawful dominion, control and ownership over the funds which comprised the Redemption Payment to the exclusion of Ardent.

51. The Receiver is entitled to immediate possession of the funds which comprise the Redemption Payment.

WHEREFORE, the Receiver demands judgment (i) ordering the Defendant to return to the Receivership Estate the full value of the Redemption Payment in an amount not less than

$500,000, plus interest thereon at the applicable legal rate; and (ii) awarding such other and further relief as may be warranted under the circumstances.

## COUNT IV

### (Unjust Enrichment)

52. The Receiver realleges and incorporates paragraphs 1-51 of the Complaint as if fully set forth herein.

53. The Redemption Payment was derived from Ardent's funds.

54. The receipt and retention of the Redemption Payment conferred a significant benefit on the Defendant to the detriment of Ardent and its other investors.

55. The retention of this benefit by the Defendant would be inequitable and unjust if the Defendant fails to repay Ardent in an amount not less than $500,000, plus legal fees and costs.

WHEREFORE, the Receiver demands judgment (i) ordering the Defendant to return to the Receivership Estate the full value of the Redemption Payment in an amount not less than $500,000, plus interest thereon at the applicable legal rate; and (ii) awarding such other and further relief as may be warranted under the circumstances.

Dated: New York, New York
       June 6, 2007

    KAYE SCHOLER LLP

    By: _____
    Keith R. Murphy (KM-5827)
    425 Park Avenue
    New York, NY 10022
    (212) 836-8000 telephone
    (212) 836-7157 facsimile

    -and-

    KAYE SCHOLER LLC
    Three First National Plaza
    70 West Madison Street, Suite 4100
    Chicago, Il 60602-4231
    (312) 583-2300 telephone
    (312) 583-2360 facsimile
    Sheldon L. Solow, Esq.
    Michael D. Messersmith, Esq.

    Counsel to the Receiver